[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Petitioner in this habeas corpus petition posits two principal reasons why he is illegally confined: 1. He is factually innocent. 2. He did not have effective assistance of trial counsel. Talton is serving a sentence of twenty-five years to life after having been convicted on February 19, 1982 of the crimes of Sexual Assault in the First Degree (53a-70) and a part two of the indictment charging him with being a persistent dangerous felony offender (53a-40). He was represented at trial by Attorney Daniel Presnick who, as of July 28, 1989, is in longer allowed to practice law in this state. He was represented by Attorney John R. Williams on his appeal to our Supreme Court which sustained the conviction. State v. Talton,197 Conn. 280 (1985). That decision sets forth the salient facts underlying the conviction.
The respondent contends that a claim of factual innocence based upon the use of perjured testimony at trial cannot be raised properly on a habeas corpus petition.
The United States Second Circuit Court of Appeals in the case of Sanders v. Sullivan, 863 F.2d 218 (2nd Cir. 1988), addressed the question of how to handle a conviction that was based on testimony that the testifying witness later recanted. In Sanders, the court concluded that, "when a credible recantation of the testimony in question would most likely change the outcome of the trial and a state leaves the conviction in place . . . allowing the conviction to stand violates due process." Sanders, supra 222. The court in Sanders further stated that "[o]nly recantations of material testimony that would most likely affect the verdict rise to the level of a due process violation." Sanders, supra 225.
The court held in Sanders that, "we do not believe that due process demands a hearing to determine the credibility of every recantation of testimony . . . [however] the recantation of testimony given at trial is looked upon with the utmost suspicion." Sanders, supra 225. If the recantation is found credible and CT Page 889 the conviction is left to stand by the state then the petitioner's due process right are violated. The continued use of perjured testimony to keep an individual incarcerated is a violation of that individual's due process rights. The classification of the issue raised as a violation of due process rights makes it appropriate to raise it through a habeas petition. The court in Gaines v. Mason, 194 Conn. 510,481 A.2d 1084 (1984) states, "[t]he petitioners correctly relied on writs of habeas corpus to raise their constitutional claims . . . the writ of habeas corpus holds an honored position in our jurisprudence . . . as a bulwark against convictions that violate fundamental fairness. "Gaines, supra 516.
Talton's claim of factual innocence was supported by the testimony of the alleged victim, who stated that she lied to the police, the prosecutorial authority, the grand jury and the trier when she said that Talton threw her onto a bed and forced her to engage in sexual intercourse. During the habeas proceeding, she testified that the petitioner merely felt her breasts and kissed her against her will; that she was very angry with him; that in 1981 and 1982 she thought that those two acts constituted rape; and that she wanted Talton punished. She went on to allege that prior to the trial in 1982 she attempted to correct her version of what occurred but was threatened by the prosecution who told her she would be charged with perjury. As a result of her fear of prosecution, she stuck to her original version of the facts during trial.
The victim was contacted by the petitioner's investigator approximately two weeks prior to the habeas corpus hearing. It was during that interview that she indicated she would recant her trial testimony. During her testimony at the habeas corpus hearing, the victim revealed what this court considers her reason for changing her story. Had she known that Talton's sentence would be so severe, she would not have testified against him in the first place.
The federal courts have established a "three-pronged test to determine if a witness's recantation necessitates a new trial." United States Ex Rel. Sostre v. Festa, 513 F.2d 1313,1317 (1975). The first prong requires that the court be "reasonably well satisfied" the trial testimony is false. The second prong requires that the habeas court find that the jury might have found the petitioner not guilty without that testimony. Finally, the habeas court must conclude that the petitioner was surprised by the false testimony and was not "able to meet it or did not know of its falsity until after the trial.
The petitioner has not satisfied either the first or the third prong. CT Page 890
The court finds the victim's testimony at the habeas corpus proceeding lacks credibility. For one thing, at the time of the sexual assault in 1981, the victim had one child. Her assertion that "rape" was committed when she was touched and kissed without her consent is unbelievable. The victim apparently feels sorry that Talton is serving so lengthy a sentence as a result of her prosecution and, this court finds, that was her motive for attempting to convince the habeas trier that she lied in 1982.
The victim witness was cross examined at length during the trial. Inasmuch as the petitioner's defense was that the victim was lying and his counsel's strategy was to establish inconsistencies in her statements and testimony together with inconsistencies between her testimony and the evidence this court is unable to conclude that the petitioner was taken by surprise at the trial.
In addition, there was an overwhelming amount of corroborating evidence produced during both the grand jury proceeding and the trial.
Dr. Emily Fine who examined the victim in the emergency room found an abraison consistent with a traumatic entry of a penis into the victim's vagina. She also found two motile sperm which is significant because her last intercourse prior to the rape occurred two months previously. The victim told the doctor that she had been forcibly assaulted.
Susan Fink, a registered nurse and rape crisis specialist, testified that the victim was crying during the interview in the emergency room. She also related the story that the victim told her which was consistent with the victim's testimony.
Clair Barrett, the victim's neighbor, testified that she was in the victim's apartment when the petitioner came to the door. That she left and went back to her apartment. About twenty minutes later the victim knocked on her door stating, "open the door; I've been raped." Ms. Barrett testified that the victim was crying and that the victim told her that the defendant raped her.
Finally, Trooper Mills, an expert in hair analysis, testified that he examined two pubic hairs taken from the victim's clothing and that those hairs were similar to Mr. Talton's.
The petitioner's remaining claim for habeas relief is that he has been denied the effective assistance of counsel guaranteed, under both the federal and state constitutions. Talton contends that trial counsel was constitutionally deficient in two respects. CT Page 891 First, he states that his lawyer failed to conduct an adequate pre-trial investigation because he failed to interview several potential witnesses who would have impeached the testimony of the victim. Among the potential witnesses he named were Eric Washington, Willie Bowman, John Manley and England Gamble. Attorney Presnick admitted that he did not interview these individuals and stated that his reasons were that each had lengthy criminal records and/or were incarcerated at that time; that he was reluctant to have the defendant, who did not testify, associated with such people in the jury's mind; and that whatever value for impeachment purposes their testimony might have had, it was not consistent with or important to his theory of defense. His theory was to establish that the victim's testimony was inconsistent with other evidence and to create thusly a reasonable doubt.
The petitioner produced Eric Washington during the habeas proceeding. In 1981, he had been convicted of felony murder which conviction was reversed on appeal, and he was awaiting a new trial. He testified that the victim was a friend of his and visited him while he was incarcerated. Talton was jailed at the same facility. He claims that the victim told him that Talton had raped her, but that he did not believe her because the victim was larger than Talton. He went on to state that when he told the victim that it was physically impossible for Talton to have raped her, she responded, "I know." Suffice it to say that this court was unconvinced by Mr. Washington on his testimony.
Willie Bowman was subpoenaed to appear at the habeas proceeding. He did not do so. Pursuant to the petitioner's request, the court issued a capias. Although the habeas trial concluded on December 4, 1991, the court continued the matter until December 13, 1991 because the petitioner wanted an additional opportunity to produce Bowman.
Bowman appeared on December 13th. He denied having received a subpoena in spite of petitioner's counsel's representation that the sheriff had, indeed, served Mr. Bowman with a subpoena. Bowman claimed that the victim had been his girlfriend in 1972. That although the victim then was merely eleven or twelve years, Bowman testified he thought she was a grown woman. He testified that in 1981 the victim had two children, ages six and three. The better evidence is that she had one child, a son, about two years old. He further testified that the victim told him that Talton did not rape her. Apparently the victim told him this at some point after the trial.
Mr. Bowman appeared to be sincere, but he was, in the court's opinion confused. His apparent confusion was so extensive as to disallow the attachment of any credence to his CT Page 892 testimony at the habeas corpus hearing.
With respect to the other potential witnesses named by the petitioner, there was insufficient evidence concerning them or what they might testify about. Mr. Presnick did state that one of the defenses Talton wanted to pursue was that the victim was engaged in "conspiracies to lie for money." Presnick chose not to pursue that defense a reasonable tactical decision.
The petitioner produced two experts in the criminal law to testify on his behalf, Attorney William Dow of New Haven and Attorney Richard Brown of Hartford. Both stated that in their expert opinions, Presnick had a professional obligation to attempt to interview all potential witnesses, especially when at least some of them might have meaningful testimony concerning the credibility of the victim. Both agreed that the victim's credibility was the key to the Talton trial.
While this court agrees that it was trial counsel's obligation to attempt to interview each and every potential witness, the petitioner has failed to prove that counsel's failure to do so prejudiced him or that a "not guilty" verdict would have resulted if he did so. See Siemon v. Stoughton, 184 Conn. 547,557 (1981).
Petitioner next asserts that his trial lawyer rendered ineffective assistance of counsel because he failed to use the grand jury transcript to impeach the complaining witness. The inconsistencies do not rise to a level that would lead any reasonable trier to conclude that the verdict would have been different had the victim been "impeached" through the use of the grand jury transcript. The bulk of the victim's testimony at trial was highly consistent with that transcript. One of the most telling comments made by the victim in the course of the grand jury hearing was, "Suppose I don't want to answer [Talton's questions]? `Cause I don't have nothin' to say to this man. I — if I knew he was in here, I woulda asked them not to have him in here, `cause I don't even want to be around him. I hate the sight of him."
For all of the foregoing reasons the petition for a writ of habeas corpus is denied.
SCHEINBLUM, Judge