**UNITED STATES of America**

v.

**Pablo Roberto ORTEGA.**

**Crim. No. 3–92–92 (WWE).**

United States District Court, D. Connecticut.

Jan. 19, 1994.

Joseph Martini, Kari Pedersen, U.S. Attys., for U.S.

Michael Sheehan, Asst. Federal Public Defender, New Haven, CT, for Ortega.

## RULING ON DEFENDANT'S MOTION FOR A NEW TRIAL

EGINTON, Senior District Judge.

On December 2, 1993, Defendant, Pablo Ortega, was convicted, after a jury trial, of (1) conspiracy to possess with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and (2) possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1). Defendant has moved for a new trial pursuant to Fed. R.Crim.P. 33 on the basis of newly discovered evidence, i.e., evidence that a government witness committed perjury in the course of defendant's trial.

## BACKGROUND

Richard Morales is a former drug dealer who once sold as much as 10 to 15 kilograms of cocaine per week. Morales has a criminal history that involves felony drug convictions. Recently, Morales pleaded guilty to charges of drug distribution. As part of his plea agreement, Morales agreed to cooperate with the government in the investigation and prosecution of the drug crime at issue.

In October and November of 1992, Morales and Juan Medrano arranged a drug deal involving the sale of one kilogram of cocaine. The drug deal was to be consummated on November 19, 1992, at Medrano's apartment in New Haven, Connecticut. According to the plan, Medrano would receive the cocaine from New York. Throughout this drug transaction, Morales was cooperating with FBI Special Agent John Kavanagh who testified at trial. Because of Morales' cooperation, investigating authorities were able to closely monitor the activity at issue.

On November 19, 1992, Special Agent Kavanagh conducted surveillance of Medrano's apartment. In cooperation with the investigation, Morales proceeded to Medrano's apartment to see if the cocaine had arrived from New York. Because Medrano had not yet received the cocaine, Morales left the apartment and reported back to the Special Agent. Thereafter, defendant pulled up to Medrano's residence in Medrano's car. Defendant and Medrano met on the porch of the residence and then entered the apartment.

Morales was instructed to re-enter Medrano's apartment. After a brief exchange with defendant and Medrano, Morales left the apartment under the guise that he needed to get money. Morales again reported to the special agents and informed them that defendant had arrived with the expected kilogram of cocaine.

Agents of the DEA, the FBI, and the Statewide Narcotics Task Force entered Medrano's apartment with a search warrant. The search uncovered a myriad of evidence indicating that a drug deal had been in progress immediately before the search. The agents found Medrano in the bathroom along with a bag of cocaine in the bathtub. The

bag had a hole in it indicating that the co-caine may have been sampled. Confirming this suspicion, the agents found a set of keys, on which they found cocaine residue. Under-neath the keys, they found a brown bag on which appeared a finger print of the defen-dant.

In addition, the investigating authorities found that defendant and Medrano each had telephonic devices known as "beepers." De-fendant's beeper number was found in Me-drano's wallet. Likewise, Medrano's number was found among defendant's personal be-longings.

## MORALES' TESTIMONY

At trial, the government called Morales as a witness. Morales testified that, on Novem-ber 19, 1992, he entered Medrano's apart-ment. Defendant had just arrived with a brown bag from which he removed a package of cocaine. Morales testified that he ob-served Medrano use a key to cut into the package of cocaine and dig out a sample.

In the course of his testimony, Morales revealed the substance of his plea and coop-eration agreement with the government. He testified that his sentence might ultimately reflect his cooperation with the government. Furthermore, Morales acknowledged his pri-or felony convictions. He also stated that he had used cocaine on two or three occasions in violation of his agreement with the govern-ment and that the government did not seek to void the agreements as a result of his drug use.

Critical to the instant motion, Morales tes-tified that he had not used cocaine since July, 1993. However, shortly *after* trial, the Pre-trial Services Office issued a report regard-ing a test on a urine specimen taken from Morales on November 17, 1993. The report indicated that Morales had used cocaine in November, 1993, in blatant contradiction of his testimony to the jury. The government promptly disclosed the information to de-fense counsel. This motion ensued.

## DISCUSSION

Defendant has moved for a new trial pur-suant Rule 33. In defendant's view, a new trial is warranted because, unbeknownst to the jury, Morales committed perjury when he testified that he had not used drugs since July, 1993.

Rule 33 provides that "[t]he court on mo-tion of a defendant may grant a new trial to that defendant if required in the interest of justice." A court will grant a new trial only "in the most extraordinary circumstances." *United States v. Locascio,* 6 F.3d 924, 949 (2d Cir.1993); *United States v. Spencer,* 4 F.3d 115, 118 (2d Cir.1993). Generally, when new evidence is at issue, a new trial is war-ranted if the new evidence would probably lead to an acquittal. *United States v. Imran,* 964 F.2d 1313, 1318 (2d Cir.), *cert. de-nied,* — U.S. ——, 113 S.Ct. 626, 121 L.Ed.2d 558 (1992).

If new evidence concerns the false testimo-ny of a government witness, the court must initially determine whether the government was aware or should have been aware of the perjured testimony. If the government knew or should have known of the witness' perjury, a new trial is required "if there is any reasonable likelihood that the false testi-mony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *United States v. Wallach,* 935 F.2d 445, 456 (2d Cir.1991). If the government was *unaware* of a witness' perjury at trial, the standard differs markedly. In such cases, a new trial is not required unless the court determines that "but for the perjured testimony, the defendant would most likely not have been convicted." *Sanders v. Sulli-van,* 863 F.2d 218, 226 (2d Cir.1988).

In the present case, the government was unaware of Morales' perjury until after the jury rendered its verdict. Six days after the jury's verdict, on December 8, 1993, Pretrial Services reported the results of Morales' uri-nalysis. Immediately upon receipt of the results, the government forwarded them to defense counsel. Each government agent that interviewed Morales in preparation for trial has stated by affidavit that he or she did not know of Morales' November drug use before the Pretrial Services' report. This court's review of defendant's motion for a new trial must reflect the fact that the gov-

ernment was reasonably unaware of Morales' perjury. *Wallach,* 935 F.2d at 456.

The issue before the court is whether the new evidence of Morales' perjury probably would lead to an acquittal. *Locascio,* 6 F.3d at 949; *Sanders,* 863 F.2d at 226. This inquiry involves the following three considerations: First, whether the false testimony concerns the merits of the case, or merely tangential matters relating to the witness' misconduct; second, whether the new evidence is cumulative impeachment information; and third, the strength of the government's case independent of the witness' testimony. *United States v. Biaggi,* 823 F.Supp. 1151, 1156 (S.D.N.Y.1993) (citing *United States v. Rosner,* 516 F.2d 269, 273–280 (2d Cir.1975), *cert. denied,* 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976)); *see also United States v. Locascio,* 6 F.3d at 949 (new trial warranted if new evidence is material, non-cumulative, and would probably lead to an acquittal).

First, evidence of Morales' drug use is not pertinent to the merits of the case, i.e., whether defendant possessed with intent to distribute cocaine and conspired to do so. No doubt, the new evidence is relevant to Morales' credibility generally. Nonetheless, it does not directly contradict the government's case or Morales' testimony concerning the details of the drug transaction. In addition, the government's independent evidence is remarkably corroborative of Morales' rendition of the drug deal. *United States v. Petrillo,* 821 F.2d 85, 89 (2d Cir.1987). "[N]ew evidence which merely discredits a government witness and does not directly contradict the government's case ordinarily does not justify the grant of a new trial." *United States v. Aguilar,* 387 F.2d 625, 626 (2d Cir1967); *Spencer,* 4 F.3d at 119. Morales' false testimony is merely tangential.

Second, the new evidence concerning Morales' false testimony is largely cumulative. In the course of cross-examination, defense counsel adduced a string of impeachment information, ranging from Morales' prior felony convictions to his plea agreement with the government. Defense counsel also was able to elicit many of the details concerning Morales' drug use. Morales testified that on several occasions he used drugs in violation of his agreement with the government. Defense counsel proceeded to demonstrate that, notwithstanding Morales' drug use, the government still intended to honor the plea agreement.

The fact that Morales committed perjury would certainly add to defense counsel's impeachment arsenal. The new evidence is *not* cumulative on the issue of whether Morales lied about his most recent drug use. Nevertheless, defense counsel effectively pursued numerous avenues of impeachment and made the jury eminently aware of Morales' potential lack of credibility. Thus, the false statement "would only be cumulative impeachment evidence of an already impeached witness." *Biaggi,* 823 F.Supp. at 1158; *United States v. Gordils,* 982 F.2d 64, 72 (2d Cir. 1992), *cert. denied,* — U.S. —, 113 S.Ct. 1953, 123 L.Ed.2d 657 (1993).

Furthermore, this court made clear to the jury that Morales' credibility was in doubt. The court cautioned the jury to be particularly careful in assessing Morales' testimony. The court instructed the jury to examine Morales' testimony with caution and to weigh it with great care. Defense counsel's searching cross-examination of Morales, coupled with the court's cautionary instruction, apprised the jury that Morales' credibility was seriously in question. *Biaggi,* 823 F.Supp. at 1158.

Third, independent of Morales' false testimony, the government's evidence strongly militates in favor of the jury's verdict. The strength of the government's case is attributable to the government's close monitoring of the drug transaction at issue. The government taped phone conversations between Morales and Medrano relating to the drug deal. These tapes were played to the jury with the aid of transcripts. Special agents conducted surveillance of Medrano's residence during the drug deal. An FBI Special Agent testified that he saw defendant and Medrano meet on the porch and then enter the apartment. Shortly thereafter, investigating authorities broke in on the drug deal in midstream, finding a kilogram of cocaine and other highly incriminating pieces of evidence. Moreover, a fingerprint expert estab-

lished that defendant had handled the brown bag found in the apartment. The court is satisfied that, apart from Morales' testimony, the government presented a strong case against defendant.

It is precisely the strength of the government's case that distinguishes this case from *United States v. Wallach,* a case upon which defendant principally relies. In *Wallach,* the witness who committed perjury was the "centerpiece of the government's case." Indeed, the witness in *Wallach* provided the only testimony that linked the defendant to the crime. In addition, the court noted the absence of an instruction to the jury emphasizing the need to weigh the witness' testimony with particular care. For these reasons, the court concluded that the new evidence of perjury required a new trial. 935 F.2d at 455–59.

In the present case, Morales was not so central to the government's case. An FBI Special Agent observed the defendant meet Medrano and then enter Medrano's apartment. Minutes later, the agents converged on the apartment, where they found defendant, a kilogram of cocaine and other incriminating evidence. Unlike *Wallach,* Morales was not the only witness that linked defendant to the crime. Unlike *Wallach,* this court urged the jury to weigh Morales' testimony with particular care. Defendant's reliance on *Wallach* is misplaced.

## CONCLUSION

For the reasons set forth above, the defendant's motion for a new trial is DENIED.