Armando BUITRAGO, Petitioner,

v.

Charles J. SCULLY, Warden, Greenhaven Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents.

No. 88 Civ. 0144(MEL).

United States District Court, S.D. New York.

Jan. 31, 1989.

Armando Buitrago, Stormville, N.Y., pro se.

Paul T. Gentile, Dist. Atty., Bronx County, Bronx, N.Y., for respondents; Peter D. Coddington, Lynn M. Talutis, Asst. Dist. Attys., of counsel.

LASKER, District Judge.

Armando Buitrago petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and moves for appointment of counsel. Buitrago was convicted of two counts of first degree robbery after a jury trial in the Supreme Court of New York, Bronx County. He was sentenced as a second violent felony offender to two concurrent 10–20 year terms of imprisonment. The Appellate Division affirmed the conviction without opinion. *People v. Buitrago,* 131 A.D.2d 981, 515 N.Y.S.2d 941 (1987). The New York State Court of Appeals denied Buitrago's application for leave to appeal. *People v. Buitrago,* 70 N.Y.2d 710, 519 N.Y.S.2d 1044, 513 N.E.2d 1312 (1987). Counsel was appointed both at the trial and appellate levels.

Buitrago argues that his constitutional rights were violated because 1) he did not receive effective assistance of trial counsel, 2) he did not receive effective assistance of appellate counsel, 3) the prosecution failed to correct the knowing use of false evidence, and 4) the prosecution improperly bolstered identification testimony of the police officers.[1]

1. Upon a review of the record, this court determined that the fourth claim—that the police officers' testimony was improperly bolstered—had not been exhausted. Although the claim had been raised below, Buitrago's argument did not allege or call to mind a violation of his constitutional rights. In letters of June 2, 1988 and July 11, 1988, the court advised Buitrago that, unless he agreed to drop his unexhausted claim, his petition would be dismissed pursuant to *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In a motion to amend his petition, Buitrago agreed to drop his unexhausted claim and have his remaining claims addressed on their merits; the motion was unopposed and is hereby granted.

## I. PETITIONER'S TRIAL COUNSEL WAS EFFECTIVE

To prevail on a claim of ineffective assistance of counsel, Buitrago must satisfy the test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). He must show first, that his lawyer's performance was deficient, *id.* at 687, 104 S.Ct. at 2064, that is, that it "fell below an objective standard of reasonableness[,]" *id.* at 688, 104 S.Ct. at 2064; and second, that his lawyer's deficient performance prejudiced the action's outcome, *id.* at 687, 104 S.Ct. at 2064, that is, "that there is a reasonable possibility that, but for the counsel's unprofessional errors, the result of the proceeding would have been different[,]" *id.* at 694, 104 S.Ct. at 2068.

Buitrago claims that his trial counsel was ineffective because: 1) he failed to move to dismiss the indictment on speedy trial grounds, 2) he failed to request an alibi charge, 3) he failed to call certain witnesses for the defense, 4) he failed to request a missing witness charge, 5) he failed to take exception to the court's failure to give the jury missing witness and alibi charges, and 6) he failed to object to the introduction into evidence of a gold chain. These arguments are addressed in turn.

First, Buitrago asserts that his counsel should have moved to dismiss the indictment on speedy trial grounds. Buitrago was arrested in August, 1984[2] and brought to trial on November 19, 1985, almost fifteen months after his arrest. Under New York law, a motion to dismiss must be granted if the State is not ready for trial within "six months of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony." N.Y.Crim.Proc. § 30.30(1)(a) (McKinney 1981). A criminal action is commenced as soon as an "accusatory instrument" is filed in a criminal court, N.Y.Crim.Proc. § 1.20(17) (McKinney 1981), which includes the filing of a felony complaint or indictment. *Id.* at § 1.20(1).

In this case the filing of the indictment commenced the criminal action, and at that point, the State was obligated to be ready for trial within six months. The State must declare its readiness for trial on the record within the time allowed; prejudice to the defendant is irrelevant as is the defendant's readiness to proceed. *People v. Hamilton*, 46 N.Y.2d 932, 415 N.Y.S.2d 208, 209, 388 N.E.2d 345, 346 (1979). Records before this court[3] indicate that the State declared its readiness for trial on January 18, 1985, well within the six month limit. Accordingly, there was no basis for Buitrago's counsel to move to dismiss the indictment on speedy trial grounds.

Buitrago next alleges that his trial lawyer failed to request an alibi charge. The claim is without merit. The sole defense witness, Richard Rivera, did not testify that he was with or knew where petitioner was on the day of the robbery. Since no alibi was established, there was no legal basis for Buitrago's attorney to request an alibi charge. *See United States v. Caputo*, 808 F.2d 963, 966–67 (2d Cir. 1987) (trial counsel not ineffective for not making a motion which he had no legal basis to make). *Compare with People v. La Chance*, 39 N.Y.2d 892, 386 N.Y.S.2d 395, 352 N.E.2d 582 (1976) (court's failure to instruct jury with alibi charge after defendant presented two alibi witnesses is reversible error); *People v. Bacon*, 84 A.D. 2d 680, 446 N.Y.S.2d 634, 635 (1981) (where defendant presented an alibi defense it was reversible error for the court to refuse to instruct the jury with an alibi charge).

Third, Buitrago claims that his trial attorney failed to request a missing witness charge. Buitrago alleges that the State knew the whereabouts of a thirteen-year old boy who entered the store during the robbery, but whom the State did not call to testify. Be that as it may, the record establishes that Buitrago's counsel *did* make a request for a missing witness charge,

---

2. There is some dispute whether the date of Buitrago's arrest was August 24, 1984 or August 31, 1984. This difference, however, does not affect the resolution of this claim.

3. Transcript of minutes for *People v. Buitrago*, for January 18, 1985, at 2.

which was denied. (Trial Record ("TR") 362–67). Furthermore, the attorney's objection to the court's ruling is expressly noted in the record. TR 366–67. Petitioner's missing witness claim is therefore without merit.

Buitrago next charges that his trial attorney was ineffective because counsel failed to call Buitrago's mother and father to testify that he was at home with them at the time of the robbery. However, Buitrago has failed to provide any support, either on the record or in his petition, to indicate that his parents would have testified as he claims.

Fifth, Buitrago alleges that his counsel was ineffective because he did not object to the court's failure to instruct the jury with missing witness and alibi charges. As noted above, defense counsel objected to the denial of his request for a missing witness charge. TR 366–67. Because counsel's failure to request an alibi charge was reasonable, his failure to object was similarly reasonable. Therefore, this claim is without merit.

Finally, Buitrago claims that it was a serious error, rising to the level of ineffective assistance of counsel, for his attorney not to object to the introduction into evidence of a gold chain which was recovered from Buitrago at the time of his arrest, TR 211–13, and alleged to have been taken from the robbery victim, TR 247. Buitrago maintains that the chain should not have been introduced into evidence because it, unlike the one taken during the robbery, did not have a clasp. However, the record indicates that trial counsel excepted to admission of the chain into evidence. TR 239–40. Moreover, the prosecution witness testified that the chain that was ripped from his neck, unlike the chain found on the defendant at the time of his arrest, had a clasp, but that the chains were otherwise identical. TR 252–54.

Since each of his six claims of ineffective assistance of trial counsel has failed to show that his counsel's performance was deficient, Buitrago has failed to meet the requirement of the first prong of the *Strickland* test; therefore his ineffective

assistance of trial counsel claim must fail, and there is no need to address the issue of prejudice.

## II. PETITIONER'S APPELLATE COUNSEL WAS EFFECTIVE

Buitrago contends that his appellate counsel was ineffective because he failed to raise trial counsel's ineffectiveness on appeal and he did not seek Buitrago's opinion on the issues to be raised on appeal.

■ The same criteria govern determinations of the effectiveness of appellate counsel as govern the determination of effectiveness of trial counsel. *Gulliver v. Dalsheim*, 739 F.2d 104, 107 (2d Cir.1984).

■ First, Buitrago has failed to produce any meritorious claim to establish that his trial counsel was ineffective; therefore, it was reasonable for his appellate counsel not to raise this issue on appeal. Buitrago's citation to *Barnes v. Jones*, 665 F.2d 427, 433 (2d Cir.1981), for support of the proposition that appointed counsel must raise and advocate *all* "colorable" issues that his client urges him to, is not meaningful because Buitrago has not established that he had brought any "colorable" issues to his counsel's attention. Moreover, *Barnes* was reversed by the Supreme Court, which noted that it is counsel's obligation to choose carefully the issues to be argued on appeal and that "by promulgating a *per se* rule that the client, not the professional advocate, must be allowed to decide what issues are to be pressed, the Court of Appeals seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983).

Buitrago next claims that he was denied effective assistance of counsel because his appellate lawyer never contacted him for his opinion as to the issues he felt were meritorious. A defense attorney's failure to consult with his client is not a *per se* violation of a defendant's Sixth Amendment rights. *Healey v. People of New*

*York,* 453 F.Supp. 14, 16 (S.D.N.Y.1978).[4] Rather, the question is whether defense counsel's performance fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. Buitrago has failed to provide this court with any evidence indicating that his appellate counsel's performance was anything less than reasonable.

Even if Buitrago had established that his counsel's failure to contact him constituted a "deficient performance," he still fails to satisfy the second prong of the *Strickland* test because he has not established that the alleged errors of his trial counsel, which he would have communicated to his appellate counsel, would have "undermine[d] confidence in the outcome" of the case. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

## III. PROSECUTOR DID NOT KNOWINGLY USE FALSE EVIDENCE

Buitrago claims that the prosecution failed to correct its knowing use of false evidence. In particular, Buitrago asserts that one of the prosecution witnesses, Detective Lance Edwards, the arresting officer, lied when he testified that he did not interview Jorge, a thirteen year old boy who was in the store at the time of the robbery. Buitrago claims that the prosecutor knew that Detective Edwards was lying yet failed to correct his perjury. Detective Edwards' cross-examination testimony in question is as follows:

> Q: Did you ever go to the home or otherwise—did you have occasion to interview a witness named Jorge in this case?
> A: No, sir.

TR 228. While Edwards denied interviewing Jorge, the complainant's testimony provided support for a finding to the contrary. On cross-examination, one of the victims, Noel Velazquez, testified as follows:

> Q: Do you know whether or not Detective Edwards interviewed Jorge in connection with this robbery?
> THE COURT: If you know.
> A: Yes, he spoke to him.

> Q: Is that because you gave him Jorge's address?
> A: No. We seen Jorge one day when Officer Edwards was dropping us off from the store. We called him over. We told him Officer Edwards wanted to speak with him.
> Q: And Officer Edwards spoke with him?
> A: Yes.
> Q: In your presence?
> A: No.
> Q: But you saw them in conversation?
> A: Yes.

TR 272–73. The other victim, Francisco Velazquez, testified on cross-examination as follows:

> Q: And when you saw [Jorge] after the incident, did you call the police? Did you try to see whether the police could interview him?
> A: I believe they did went over and spoke to him.
> Q: What?
> A: I believe that they did go over and speak with him.
> Q: Go over where?
> A: To his home.

TR 152–53.

■ A state conviction obtained by the knowing use of perjured testimony is unconstitutional. *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 341–42, 79 L.Ed. 791 (1935). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois,* 360 U.S. 264, 269–70, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959) (citations omitted). This rule applies even though the false testimony only goes to the credibility of the witness. *Id.* A conviction must be reversed if "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (footnote omitted). Furthermore, a defendant's due process rights can be vio-

---

**4.** Although *Healey* dealt with the effectiveness of trial counsel, its premise also applies to evaluate effectiveness of appellate counsel. *Cf. Gulliver,* 739 F.2d at 107.

lated when a prosecutor was not, but should have been, aware that her or his witness was lying. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (prosecutor responsible to know of promise of immunity given to a witness by another prosecutor in the same office).

■ While Buitrago correctly cites various holdings relating to a prosecutor's knowing use of false testimony, he incorrectly applies them to the facts of this case. Had Jorge come forward indicating that he was interviewed by Edwards and provided Edwards with information which was exculpatory to the defendant, or had Edwards recanted his trial testimony, then there might be cause to hold an evidentiary hearing to ascertain the truth of the facts asserted. But no evidence has surfaced since the trial to indicate that Edwards was lying. Even assuming that Edwards' testimony was perjured, there is no indication or evidence of record that the prosecutor knew or had reason to know that it was false.

The Court of Appeals of this circuit recently held that, even absent a showing of prosecutorial misconduct, a conviction obtained in part by perjured testimony may violate due process. *Sanders v. Sullivan,* 863 F.2d 218, 224 (2d Cir.1988) (holding that conviction based on testimony later recanted may be of extraordinary nature to find due process violation and remanding for hearing as to credibility of recantation). Yet Buitrago's claim does not qualify even under the *Sanders'* rule because he has failed to establish that Detective Edwards' testimony was in fact perjured. While the witnesses' testimony did conflict, as is regularly true in litigated cases, that alone is not a basis to conclude that Edwards' testimony was perjured; a mere conflict in evidence cannot be a basis for habeas relief.

As was true in *United States v. Miranne,* 688 F.2d 980, 989 (5th Cir.1982), *cert. denied,* 459 U.S. 1109, 103 S.Ct. 736, 74 L.Ed.2d 959 (1983), there is no hard evidence of perjury.

The only evidence of perjury was in the conflict between the testimony of [two witnesses]. At most, this represented a contradiction in the testimony of two witnesses. Generally, the credibility of witnesses and the weight to be given to their testimony are questions within the province of the jury. (citations omitted). *See also United States v. Hemmer,* 729 F.2d 10, 17 (1st Cir.) (existence of inconsistencies between grand jury and trial testimony "does not warrant the inference that the government knowingly introduced perjurious testimony[;]" jury was best suited to address the inconsistencies and sort "falsehoods from facts"), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984); *United States v. Holladay,* 566 F.2d 1018, 1019 (5th Cir.) ("Presentation of a witness who … contradicts his prior testimony is not to be confused with eliciting perjury. It was for the jury to decide whether or not to credit the witness"), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978).

Moreover, the *Sanders* court held that, absent prosecutorial misconduct, "the perjured testimony which will trigger a due process violation must be of an extraordinary nature. It must leave the court with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." *Sanders,* 863 F.2d at 226 (footnote omitted). Edwards' testimony related only to the events surrounding Buitrago's arrest. It is clear that the State's case was built primarily on the victims' identification of Buitrago, independently, at two separate lineups. Since Edwards' testimony was not "of an extraordinary nature," Buitrago has failed to meet the standard announced in *Sanders.*

## IV. APPOINTMENT OF COUNSEL

■ In deciding whether to appoint counsel for indigent civil litigants, the district court should first consider the merits of the indigent's claim. *Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir.1986). Even where the claim is not frivolous, counsel need not be appointed when the chances of success are "highly dubious." *Miller v. Pleasure,* 296 F.2d 283, 285 (2d Cir.1961), *cert. denied,* 370 U.S. 964, 82

**958**

S.Ct. 1592, 8 L.Ed.2d 830 (1962). If an indigent's claim satisfies the threshold requirement, the court should then consider

the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge,* 802 F.2d at 61–62.

Since Buitrago's petition lacks merit, he has failed to meet the threshold requirement for appointment of counsel. Even if counsel were appointed, Buitrago's chances of success would at best be "highly dubious."

For the reasons stated above, the petition must be denied. A certificate of probable cause is denied.

It is so ordered.