Phillip NIEVES, Plaintiff,

v.

Walter R. KELLY, Superintendent, Defendant.

No. 96 Civ. 4382(DLC).

United States District Court, S.D. New York.

Dec. 23, 1997.

---

Phillip Nieves, Attica, NY, pro se.

Allen H. Saperstein, Assistant District Attorney, Bronx, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

COTE, District Judge.

Through a March 18, 1996, petition for a writ of habeas corpus, received by the Court's Pro Se Office on April 11, 1996 and filed on June 14, 1996, Philip Nieves ("Nieves") attacks a 1983 conviction for a robbery occurring at approximately 7:15 p.m. on February 16, 1982 ("the 7:15 robbery"). In doing so, Nieves relies on a subsequent conviction for another robbery occurring 15 minutes earlier on February 16, 1982, and four blocks away ("the 7:00 robbery"). In effect, he argues that he could not have committed both robberies and that his trial counsel was ineffective in not submitting proof that he had committed the 7:00 robbery during his trial for the 7:15 robbery. He also argues that the Government violated its Brady obligations by withholding evidence that

tended to show that he was innocent of the 7:15 robbery.

On August 2, 1996, this Court referred the petition to Magistrate Judge Andrew J. Peck for a Report and Recommendation. On November 13, 1997, Judge Peck issued his Report ("Report") and recommended that the petition be denied. The petitioner has filed no objections to the Report. In order to preserve its rights, the respondent has objected solely to that portion of the Report which concludes that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") does not apply retroactively.

**Standard**

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). *See* Fed.R.Civ.P. 72(b). A court may accept those findings to which no specific written objection is made as long as those findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y.1997); *Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y. 1991). A *de novo* review must be conducted of those issues to which a specific written objection has been made. Fed.R.Civ.P. 72(b). *See Greene*, 956 F.Supp. at 513.

**Discussion**

█ Reviewing *de novo* the respondent's objection that the petition is untimely under the AEDPA, I find that the objection is without merit. As described in the Report, this habeas petition is not time-barred by the AEDPA, which was signed into law on April 24, 1996, since the AEDPA's one-year statute of limitations for filing petitions for habeas corpus does not apply retroactively to petitions made before the effective date. *See Nelson v. Walker*, 121 F.3d 828, 831 (2d Cir.1997); *Reyes v. Keane*, 90 F.3d 676, 679 (2d Cir.1996). While Nieves' petition was not filed before the AEDPA's April 24, 1996 effective date, it was sworn to on March 18, 1996 and received by this Court's Pro Se Office on April 11, 1996. Thus, the petition is timely.

█ I review the balance of the Report for clear error and find none. As Judge Peck points out in his thorough and well reasoned Report, the failure of defense counsel to offer proof at Nieves' first trial—the trial for the 7:15 robbery—that he committed a robbery 15 minutes earlier and four blocks away does not constitute ineffective assistance of counsel. The same attorney represented Nieves at his two robbery trials. He was well aware of the proximity in time and place between the two crimes and Nieves' contention that he could not have committed them both. It was entirely reasonable for defense counsel to make the tactical decision that Nieves would be harmed by offering proof that Nieves had committed another robbery when that proof would not conclusively establish that it was impossible for Nieves to have committed both robberies. Defense counsel chose instead to attack the reliability of the witness identification testimony.

The Brady argument is also quickly disposed of. As Judge Peck explains, the information which Nieves contends was withheld was either known to the defense or was not exculpatory.

**Conclusion**

The Court adopts Judge Peck's recommendation that the petition be denied. The Clerk of Court shall dismiss this petition. Further, I find that a certificate of appealability shall not issue and that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

*REPORT AND RECOMMENDATION*

PECK, United States Magistrate Judge.

Petitioner Philip Nieves petitions for a writ of habeas corpus, alleging that his trial counsel was ineffective and that the State committed *Brady* violations by failing to disclose a photographic array, lineup sheet and witness statements from a different robbery with which Nieves also was charged. (*See* Petition ¶ 12(A)–(B).) This petition involves Nieves' conviction for robbing Milton Moran on February 16, 1982 at 7:15 P.M. In a separate trial occurring some months after the Moran trial, Nieves was convicted of

robbing Tony's Deli at around 7:00 P.M. on February 16, 1982. Nieves' habeas claim is premised on the argument that since he was found guilty of the Tony's Deli robbery that occurred at approximately the same time as the Moran robbery, he could not have been guilty of the Moran robbery. Not surprisingly, his defense counsel did not pursue such a risky second robbery alibi defense at trial. For the reasons set forth below, I recommend that the Court deny Nieves' habeas petition.

## FACTS

Petitioner Nieves was convicted after a jury trial for the armed robbery of Milton Moran, and sentenced to 12½ to 25 years imprisonment. (*See* Petition, ¶¶ 1–4, 12.)

### THE MORAN ROBBERY

Milton Moran testified that on February 16, 1982 at approximately 7:15 P.M., when he entered his apartment house at 2121 Grand Concourse and 181st Street in the Bronx, Nieves robbed him at gunpoint. (3/15/83 *Wade* Tr. at 8, 19–20; 3/17/83 Trial Tr. At 5–6, 12.) Nieves stood in front of Moran for one to two minutes, while two accomplices came behind Moran and stole his wallet containing $60. (3/15/83 *Wade* Tr. at 8–9, 21–22, 24–25; 3/17/83 Trial Tr. at 6–7, 24, 34.) Moran did not see the faces of the robbers who were behind him. (3/15/53 *Wade* Tr. at 22; 3/17/83 Trial Tr. at 25, 36.) When Moran ran after the robbers, Nieves fired three shots at him. (3/15/83 *Wade* Tr. at 9–10; 3/17/83 Trial Tr. at 8, 26–27.)

Moran reported the robbery and went to the police station to look at two books of photographs, but could not identify any of his assailants. (3/15/83 *Wade* Tr. at 10–11, 13–14.) On February 17, 1982, Officer McNamara showed Moran a four-photograph array and Moran identified Nieves, and then picked Nieves out of a lineup on February 18, 1982. (*Id.* at 11–12, 14–15, 31–35, 40–42, 55–56; 3/17/83 Trial Tr. at 10, 33; *see also* 3/16/83 Trial Tr. at 17–21, 24–32.) Moran noted that he had seen Nieves four times before the robbery, hanging around the neighborhood. (3/15/83 *Wade* Tr. at 12–13, 31; 3/15/83 Trial Tr. at 10–12.) The assistant district attorney produced to the defense at the *Wade* hearing

a photograph of the lineup, but indicated that he did not have the photo array at that time. (3/15/83 *Wade* Tr. at 15–16, 39–40.) The Court at the *Wade* hearing denied Nieves's motion to suppress Moran's identification testimony, finding that the photo array and lineup were not suggestive. (*Id.* at 56–56a.)

Nieves' counsel's cross-examination of Moran at trial raised questions as to the lighting conditions, how long Moran saw Nieves, that the assailant was wearing a hood that covered part of his face, that Moran was nervous, etc., to raise reasonable doubt as to Moran's identification of Nieves. (*E.g.*, 3/17/83 Trial Tr. 17, 24, 55–61.) Counsel also argued that Moran may have picked Nieves out of the lineup because he was a "familiar face," not from the robbery but from Moran having seen Nieves hanging around the neighborhood. (*Id.* at 63–64.)

The People rested after the trial testimony of Officer McNamara and Mr. Moran. (*Id.* at 37.) Mr. Nieves indicated, on the record outside the jury's presence, that he did not wish to testify. (*Id.* at 43–44.) The defense rested without calling any witnesses. (*Id.* at 44.)

After lengthy deliberation, the jury found Nieves guilty of robbery. (3/19/83 Trial Tr. at 130–32.) Nieves was sentenced to 12 1/2 to 25 years imprisonment. (Petition ¶ 3.)

### THE TONY'S DELI ROBBERY

Nieves was represented by the same lawyer, Mr. Lazarus, on both the Moran and Tony's Deli robbery charges. (*See* Petition ¶ 12 at inserted p. (d).) Three armed robbers held up Tony's Deli on February 16, 1982. Nieves and two co-defendants, Jimmy Aponte and George Dodaj, were charged with that robbery. Nieves relies in his present habeas petition on evidence from the Tony's Deli robbery trial as to the timing of the Tony's Deli robbery, which, he maintains was exculpatory as to the Moran robbery. (*See* Petition ¶ 12(A)–(B).)

#### The Wade Hearing

On May 16, 1983, a *Wade* hearing was held in the Tony's Deli robbery case. (*See* 5/16–19/83 *Wade* Tr.) Tony's Deli is a bodega located at 2071 Valentine Avenue and 180th

Street in the Bronx. (*Id.* at 34–35, 209, 239, 250, 293–94.) Officer McNamara testified about the February 18 and 19, 1982 lineups of Nieves and his two co-defendants for the Tony's Deli robbery. (*Id.* at 3–4, 13–16.) Of the five Tony's Deli witnesses who viewed Nieves' lineup, only one, Carlos Romero, identified Nieves as one of the robbers. (*Id.* at 16–18, 58–71, 251–61, 285.) Other witnesses identified Nieves's co-defendants, Jimmy Aponte and George Dodaj, in separate lineups. (*E.g., id.* at 10, 25–26, 33.)

Officer Joglar testified at the *Wade* hearing about the photo array involving Nieves in the Tony's Deli case. (*Id.* at 108–10.) Officer Joglar produced that photo array at the hearing and it was entered into evidence as People's Exhibit 5. (*Id.* at 110, 116; *see* Petition Ex. 5.) The array contained six photos—including Nieves, co-defendant Dodaj and four "fillers." (5/16–19/83 *Wade* Tr. at 111; *see also* II Trial Tr. at 26–30.) Darinell Phillipe and Juan Ramirez identified Nieves from the photo array as the robber who shot Ramirez. (5/16–19/83 *Wade* Tr. at 111–12, 121–24, 141–44.)

To establish probable cause for Nieves' arrest, the Tony's Deli *Wade* hearing also involved testimony by Officer McNamara concerning Moran's identification of Nieves. (*Id.* at 182–86.) Officer McNamara responded to Moran's robbery call, and drove Moran around the neighborhood to look for his assailants. (*Id.* at 184–85.) Moran spotted Nieves while Nieves was crossing the Grand Concourse at 183d Street. (*Id.* at 185–86.) Nieves fled, the officers apprehended him, Moran identified Nieves, and Nieves was arrested. (*Id.* at 186–87.) The police concluded that Nieves also fit the description for the Tony's Deli robbery. (*Id.* at 188–92.) Both robberies involved three male Hispanics and involved guns. (*Id.* at 192–93.) Moreover, the officers knew that Nieves, Dodaj and Aponte "hung around" together. (*Id.* at 193.)

At the conclusion of the Tony's Deli *Wade* hearing, the Court denied all defense motions to suppress the lineup and photo array identifications. (*Id.* at 381–88; *see also* I Trial Tr. at 2–21.)

### The Trial

The trial of Nieves and his two co-defendants for the Tony's Deli robbery began on May 24, 1983. (*See* I Trial Tr.)

Nieves' Petition relies on a District Attorney file folder that indicates the Tony's Deli robbery occurring on February 16, 1982 at 19:05, *i.e.,* 7:05 P.M. (*See* Petition Ex. B, last page.) The hearing and trial testimony, however, was that the crime occurred at around 7:00 P.M. The District Attorney's opening described the Tony's Deli robbery as occurring at approximately 7:00 P.M. (I Trial Tr. at 55.) Darinell Phillipe testified that the robbery occurred at "[a]bout 7, 7:30." (*Id.* at 71.) Phillipe identified Nieves as the robber who hit another deli worker with his gun. (*Id.* at 79–80.) He also identified Aponte and Dodaj as the other two robbers. (*Id.* at 75–76, 82–84.) When the three robbers left the store, they "went up 180th Street—up a hill on 180th Street towards Grand Concourse." (*Id.* at 87.) Phillipe testified that the entire robbery, from the time the robbers entered to the time they left the store, took "[a]bout five to seven minutes." (*Id.* at 105, 110.) Phillipe could not recall if he identified Nieves in a lineup. (*Id.* at 127–28.)

Carlos Romero testified that at "[a]round seven o'clock at night [on February 16, 1982], three people walked in [to Tony's Deli] and they told us this is a holdup." (II Trial Tr. at 34.) At trial, Romero identified Nieves and Aponte as two of the three robbers. (*Id.* at 41–42.) He also testified to having identified Nieves in a lineup two days after the robbery. (*Id.* at 42–44, 61–62.) Romero was too nervous to be able to determine how long the robbers were in the store. (*Id.* at 70–71, 85.) The thrust of Nieves' counsels' questions to Romero was that the robbery had occurred very quickly (*id.* )—as part of a mistaken identity defense.

The People's next witness was Juan Ramirez. (*Id.* at 94.) Ramirez testified that at approximately 7:00 P.M. he entered Tony's Deli to buy milk. (*Id.* at 96.) One of the robbers (Aponte) shot Ramirez in the neck, and he was taken to the hospital. (*Id.* at 97–99, 104–05.) Nieves' counsel brought out on cross-examination that Ramirez had mis-

identified Nieves from a photo array as his shooter, but the shooter actually was Aponte. (*Id.* at 122, 124–25.)

Antonio Hernandez, the owner of Tony's Deli, testified that on February 16, 1982 at approximately 7:00 P.M. someone came into the store with a gun and announced a holdup. (II Trial Tr. at 153–58.) The robbers got over $1,000 from the store. (*Id.* at 159.) Hernandez did not see their faces. (*Id.*) Hernandez said initially that the robbery lasted "about ten minutes." (*Id.* at 161.) Nieves relies on that ten-minute testimony in his present habeas petition. On cross-examination by Aponte's counsel, however, Hernandez agreed that it was really "very fast," and was less than five minutes. (*Id.* at 165.) [1]

Finally, Albert Ebanks testified that he was passing Tony's Deli at approximately 7:00 P.M. on February 16, 1982 when he saw somebody block the door inside the store and shortly thereafter he heard a gun shot from inside the store and saw three men run out. (*Id.* at 187–90, 214.) The three men ran "up the hill," that is, up 180th Street. (*Id.* at 193.) They were running very quickly. (*Id.* at 193, 216.) Ebanks identified Dodaj as one of the three, but could not identify Nieves or Aponte. (*Id.* at 194–95, 199–200 .)

The People then rested. (*Id.* at 234–35, 243–44.) All three defendants rested without calling any witnesses. (*Id.* at 244–45.) In closing argument, defense counsel for all three defendants pointed to inconsistencies in the witnesses's testimony, including inconsistencies between the witness's trial and prior (grand jury or hearing) testimony. (*See generally id.* at 260 ff.; *see also id.* at 282.)

Nieves' and Aponte's counsels, closings also stressed how quickly the robbery occurred. (*Id.* at 270–71, 285.) Nieves' counsel further stressed on closing that Ebanks, Hernandez, Ramirez and Phillipe couldn't identify Nieves, and the remaining witness's testimony (Romero) was contradictory and confused. (Id. at 283–96.) "The name of this game is mistaken identification," according to defense counsel. (*Id.* at 274; *see also id.* at 307.)

The jury found each defendant guilty of robbery in the first degree, but only found defendant Aponte guilty of attempted murder in the second degree. (II Trial Tr. 366–75.) On June 27, 1983, Nieves was sentenced to 7 to 20 years imprisonment, to run concurrently with his Moran sentence and a 42½ years to life sentence he had received in another robbery-murder case. (Sentencing Tr. at 21–24.) [2] Nieves' counsel informed the Court during sentencing that "Nieves has indicated to me throughout that trial and even today that he's innocent of this charge; that he is not guilty in any way shape or form whatsoever and that he had nothing to do with this matter, and he maintains and continues to maintain that innocence." (*Id.* at 21.)

### *NIEVES' STATE COURT APPEALS AND COLLATERAL ATTACKS AS TO THE MORAN ROBBERY CONVICTION*

Nieves, represented by new counsel, appealed his Moran robbery conviction to the First Department. (*See* Petition ¶¶ 9(a), 15(e); *see also* Saperstein Aff.Ex. 1: Nieves' Appeal Br.) Nieves argued for reversal of his conviction because of the State's failure to preserve the photo array viewed by Moran.

---

1. He testified:
   Q: Now, Mr. Hernandez, you just told the jury it took about ten minutes?
   A: Approximately.
   Q: Wasn't it, approximately, five or less?
   A: Yes, it would be less.
   Q: Did it happen very rapidly?
   A: Very fast.
   Q: Very fast. They came in, they took what they wanted, and they got out?
   A: Get out.
   (*Id.* at 165–66.)

2. "A court may decline to reach a claim of constitutional error when considering a petition for habeas corpus in a case in which the petitioner is serving a concurrent sentence on a separate conviction which does not violate the Constitution." *Padilla v. Mann,* 92 Civ. 6642, 1994 WL 542247 at *8 (S.D.N.Y. Oct.4, 1994); *see also, e.g., United States v. McKendrick,* 332 F.Supp. 1216, 1218 (S.D.N.Y.1971) ("It is the rule of this circuit that a petitioner will not be heard to complain of an error on one count when he receives concurrent sentences on several counts."). The State has not raised this point and the Court has no information about whether Nieves' concurrent 42 1/2–life robbery-murder sentence has been overturned. Accordingly, the Court cannot and does not rule based on this doctrine.

(*See* Saperstein Aff.Ex. 1 at 10–17.) On April 9, 1985, the First Department affirmed Nieves' conviction, without opinion. *People v. Nieves*, 110 A.D.2d 1092, 488 N.Y.S.2d 529 (1st Dep't 1985). The Court of Appeals denied leave to appeal. *People v. Nieves*, 65 N.Y.2d 984, 494 N.Y.S.2d 1054, 484 N.E.2d 684 (1985).

Some four years later, in August 1989, Nieves brought a pro se CPL § 440.10 motion to vacate his conviction, alleging that the prosecution failed to turn over exculpatory evidence—police reports, memo books and summaries of witnesses' pretrial statements—and that counsel was ineffective. (Saperstein Aff.Ex. 5: Nieves CPL § 440.10 Motion.) Nieves' ineffective assistance claim argued that had his counsel investigated, counsel would have learned of the Tony's Deli robbery timing, which would alibi Nieves for the Moran robbery. (*Id.*) The trial judge denied the motion without opinion on May 9, 1990. (*Id.* Ex. 8.) The First Department denied leave to appeal on January 29, 1991. (*Id.* Exs. 9 & 10.)

After successfully obtaining certain police reports and documents through a Freedom of Information Law request (*see id.* Exs. 11–14), Nieves brought a second CPL § 440.10 motion in the trial court on July 13, 1993. (Saperstein Aff.Ex. 15.) Nieves alleged a *Brady* violation for the prosecution's alleged concealment of a police report putting the Tony's Deli robbery at 7:05 P.M. and witness testimony that the robbery lasted ten minutes, and argued that he therefore could not have robbed Moran at 7:15 P.M. (*Id.*) On March 7, 1994, the trial judge denied the motion, on procedural grounds and also on the merits. (Saperstein Aff. Ex.

22, at 1.)[3] "[I]t is unclear how complainant's [Moran's] purported failure to identify certain individuals as co-defendants in the robbery, could serve as a basis for overturning the conviction of the defendant [Nieves], who was identified by the complainant as the gunman in the robbery. In addition, there is no evidence that the photo-array [from the Tony's Deli case] ... was the same photo-array exhibited to Mr. Moran." (*Id.* at 1–2.) The First Department denied leave to appeal on July 7, 1994 without opinion (Saperstein Aff. Ex. 25) and the Court of Appeals dismissed Nieves' application for leave to appeal on September 27, 1994, also without opinion. (*Id.* Ex. 27.)

### Nieves' Instant Habeas Petition

Nieves instant petition for a writ of habeas corpus is dated March 18, 1996, and was received by the Court's Pro Se Office on April 11, 1996.[4]

Nieves summarized his Petition, as follows:

> The crux of my claims are that I was convicted for two separate robberies that occurred on the same night within the same time frame; that because of this, I had been wrongfully convicted for the robbery up for [habeas] review which my trial attorney, and even the State of New York, could have prevented.

(Petition ¶ 12 at inserted p. (a).) Nieves claims that police reports and testimony in the Tony's Deli case indicated that the robbery began on February 16, 1982 at 7:05 P.M. and lasted 7–10 minutes. (*Id.* at inserted pp. (a) & (d).) Nieves argues that he therefore could not have robbed Moran at 7:15 P.M. that night. (*Id.* at inserted p. (a).)

Nieves has included a map of the area showing that Tony's Deli (Valentine Avenue

---

**3.** In responding to Nieves' habeas petition, the State concedes that the trial judge's procedural default holdings do "not rest on an 'adequate' state ground." (State Br. at 25 n. 3, 32 n. 10.) Accordingly, the Court is free to, and does, reach the merits of Nieves' habeas petition.

**4.** The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law on April 24, 1996. Since Nieves, petition was received by the Court's Pro Se Office on April 11, 1996, and the AEDPA does not apply retroactively, Nieves' petition is not barred by or governed

by the AEDPA. *See, e.g., Lindh v. Murphy*, —— U.S. ——, ——, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997); *Nelson v. Walker*, 121 F.3d 828, 832 (2d Cir.1997); *Johnson v. Edwards*, 96 Civ. 3658, 1997 WL 599402 at *2 (S.D.N.Y. Sept. 29, 1997) (effective filing date of habeas petition is date inmate handed it to prison officials, which is presumed to be a few days before it is received by the court's pro se office); *Stratton v. Chase Manhattan Bank*, 97 Civ. 2233, 1997 WL 471715 at *1 (S.D.N.Y. Aug.18, 1997) (Peck, M.J.) ("The law is clear that a complaint is deemed filed for statute of limitations and other purposes when received by the Pro Se Office.") (citing cases).

and 180th Street) is four blocks away from Moran's apartment (Grand Concourse and 181st Street). (Petition Ex. A.)

Nieves' first habeas ground is ineffective assistance of counsel. (Petition ¶ 12(A) & inserted pp. (e)–(f).) According to Nieves:

[C]ounsel's failure to perform any discovery or conduct any investigation or interview accessible witnesses after learning that petitioner had been charged with two robberies that occurred the same day, let go the only reliable evidence that tends to establish [Nieves'] innocence. And had [counsel] taken the time to familiarize himself with the case, he would have, as any professional competent attorney under the same circumstances, learned that whilst Tony's Deli [robbery] was in progress or just ending, with three gunmen fleeing in separate directions thereafter, Moran himself was in the midst of being robbed in the stairway of his building.

(Petition ¶ 12(A) at inserted pp. (e)–(f).)

Nieves' second habeas claim is that the State committed a *Brady* violation by failing to turn over evidence that allegedly proved his innocence of the Moran robbery. (Petition ¶ 12(B).) The allegedly withheld information is the photo-array shown to Moran, from which Moran identified Nieves, and the fact that Moran did not identify Dodaj and Aponte (Nieves' Tony's Deli codefendants); and the alleged facts that Tony's Deli was robbed at 7:05 P.M. and the robbery lasted 10 minutes. (Petition at inserted p. (i).) Nieves argued that Moran's failure to identify Dodaj and Aponte cast doubt on Moran's identification of Nieves. (*Id.* at inserted p. (j).) The Tony's Deli robbery time frame, according to Nieves, showed "that it was impossible for [Nieves] to be at two totally separate locations during one specific time frame." (*Id.*)

## ANALYSIS

### I. NIEVES' COUNSEL WAS NOT INEFFECTIVE UNDER THE STRICKLAND v. WASHINGTON TEST

#### A. The Strickland v. Washington Standard

The Supreme Court has announced a two-part test to determine if counsel's assistance

was ineffective. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* This performance is to be judged by an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064.

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. at 2065.

Second, the defendant must show prejudice from counsel's performance. *Id.* at 687, 104 S.Ct. at 2064. The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. at 2068–69. Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different

ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, *a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.*

*Id.* at 695–96, 104 S.Ct. at 2069 (emphasis added); *see also, e.g., DeLuca v. Lord,* 77 F.3d 578, 584 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996).

The Supreme Court has counseled that these principles "do not establish mechanical rules." *Strickland v. Washington,* 466 U.S. at 696, 104 S.Ct. at 2069. The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. *Id.* The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697, 104 S.Ct. at 2069.

In addition, the Supreme Court also has counseled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91, 104 S.Ct. at 2066.

In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690, 104 S.Ct. at 2066.

### B. Application of the Strickland Standard to Nieves' Ineffective Assistance Claim

Under the applicable legal standards, it is clear that Nieves' ineffective assistance claim does not meet either prong of the *Strickland* test. Nieves claims that counsel's failure to investigate precluded counsel from raising an alibi defense that another robbery (of Tony's Deli) that Nieves was later convicted of, "was in progress or just ending" when the Moran robbery took place. (Petition at inserted p. (f).) Nieves' claim, however, relates to decisions that fall squarely within the ambit of trial strategy. Counsel's tactical decision not to raise an alibi defense that Nieves could not have robbed Moran because he was committing the Tony's Deli robbery, does not demonstrate that counsel's performance was professionally deficient.

■ Nieves claims that his trial counsel failed to properly investigate and interview potential witnesses to establish his alibi defense. (Petition at inserted p. (e), (g).) Courts in this Circuit have made clear that "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987); *see also, e.g. Rodriguez v. Mitchell,* 92 Civ.2083, 1993 WL 229013 at *3, 5 (S.D.N.Y. June 24, 1993) ("Counsel's decision not to call a witness, if supported by valid tactical considerations, does not constitute ineffective assistance of counsel.").[5]

---

**5.** Similarly, Nieves' claim that counsel was ineffective for failing to make discovery requests or motions is similarly unavailing. First, it was not necessary for counsel to do since the Bronx District Attorney's office had a formal "voluntary disclosure" policy. "On January 9, 1974, formal

More importantly, "[g]enerally, the decision whether to pursue a particular defense is a tactical choice which does not rise to the level of a constitutional violation.... [T]he habeas court 'will not second-guess trial strategy simply because the chosen strategy has failed ...' especially where the petitioner has failed to identify any specific evidence or testimony that would have helped his case if presented at trial." *Jones v. Hollins,* 884 F.Supp. 758, 765–66 (W.D.N.Y.) (citations omitted), *aff'd,* 89 F.3d 826, 1995 WL 722215 (2d Cir.1995); *see also, e.g., United States v. Vegas,* 27 F.3d 773, 777–78 (2d Cir.) ("As is often the case when convicted defendants complain after-the-fact of their lawyers' trial performance, we find that the choices made by the attorney were matters of trial strategy; because counsel's strategy was a reasonable one, these claims do not show incompetence"; not ineffective to pursue entrapment defense rather than innocence defense), *cert. denied,* 513 U.S. 911, 115 S.Ct. 284, 130 L.Ed.2d 200 (1994); *Rogers v. Zant,* 13 F.3d 384, 387 (11th Cir.1994) ("By its nature, 'strategy' can include a decision not to investigate. *Strickland* indicates clearly that the ineffectiveness question turns on whether the decision not to make a particular investigation was reasonable."); *Lawson v. Caspari,* 963 F.2d 1094, 1096 (8th Cir.1992) (counsel not ineffective for failing to call alibi witnesses he did not believe were credible, especially where counsel "presented a theory of the case by pointing out the 'weaknesses in the state's case and rais[ing] serious questions about the credibility of the state's sole eyewitness.'"); *Mills v. Scully,* 826 F.2d 1192, 1197 (2d Cir.1987)(not ineffective assistance to forego a defense approach that poses greater risks than benefits); *Harris v. Hollins,* 95 Civ. 4376, 1997 WL 633440 at *6 (S.D.N.Y. Oct.14, 1997) (counsel not ineffective for not

securing alibi witnesses where counsel presented a vigorous defense); *LaFrance v. Mitchell,* 93 Civ. 0804, 1996 WL 741601 at *2 (S.D.N.Y. Dec.27, 1996) ("It is quite evident that the decision to omit this [alibi] defense was a sound one and that the basis for an effective alibi defense simply did not exist."); *Briecke v. New York,* 936 F.Supp. 78, 83 (E.D.N.Y.1996) ("counsel's strategic decision to pursue an insanity defense, and not to conduct a substantial investigation into an intoxication defense, was informed and reasonable" where petitioner had a history of psychiatric problems and there were factual impediments to raising intoxication defense); *Johnson v. Mann,* 92 Civ.1909, 1993 WL 127954 at *1 (S.D.N.Y. April 20, 1993) (counsel not ineffective for strategic decision to attack identification of petitioner rather than to rely on an "inherently suspect" alibi defense); *Munoz v. Keane,* 777 F.Supp. 282, 288–89 (S.D.N.Y.1991) ("Given the overwhelming evidence that [petitioner] participated in the drug transaction at issue, it was reasonable for defense counsel to conclude, as a strategic matter, that presenting testimony of the alleged alibi witnesses would be damaging to [petitioner's] case."), *aff'd sub nom. Linares v. Senkowski,* 964 F.2d 1295 (2d Cir.), *cert. denied,* 506 U.S. 986, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992); *Minor v. Henderson,* 754 F.Supp. 1010, 1017–18 (S.D.N.Y.1991) (counsel not ineffective for tactical choice to not present alibi defense where evidence petitioner believed supported such defense did not exist); *Buitrago v. Scully,* 705 F.Supp. 952, 954 (S.D.N.Y.1989) (counsel not ineffective for failing to present alibi witness where petitioner fails to show witness would provide alibi).

Here, Nieves alleges that investigation would have shown that Tony's Deli was

announcement was made to the judiciary, the defense bar, and the public that full disclosure was an office-wide policy of the Bronx District Attorney and applied equally to every criminal case.... In May, 1979, ... [the] Assistant Administrative Judge for the City of New York, promulgated [a] ... court rule for the Criminal Branch of the Supreme Court, Bronx County" mandating that all pretrial discovery motions specify what material had been voluntarily provided by the District Attorney and what addition-

al materials were sought from the District Attorney. *See* Mario Merola, *Modern Prosecutorial Techniques,* 16 CRIMINAL LAW BULLETIN 260 (1980).

Second and more important, counsel's alleged failure to seek the discovery was part and parcel of counsel's strategic decision not to assert the risky other robbery alibi defense, and thus is not ineffectiveness for the reasons discussed in text.

robbed at 7:05 P.M. and that a witness testified that Tony's Deli robbery lasted ten minutes, and thus he could not have committed the Moran robbery at 7:15 P.M. several blocks away. (Petition ¶ 12(A).) Nieves concedes that his counsel (who represented Nieves in both cases) was aware generally of Nieves' claim that he could not have committed both robberies at roughly the same time. (*See, e.g.,* Petition at inserted pp. (c), (e)–(g); Nieves 8/96 Br. at 16; Nieves 11/7/96 Reply Br. at 6–7, 9.) Nieves also concedes in his Petition that counsel rejected use of the other robbery defense. According to Nieves, "[o]n March 15, 1983, prior to a *Wade* hearing commencing [on the Moran robbery case], I remember asking Mr. Lazarus how could I be accused of two crimes that happened the same day. He replied that I could have done one and then the other." (Petition at inserted p. (c).) Nieves' counsel obviously noticed a key flaw in Nieves "alibi" defense— that the timing was such that Nieves could have committed both crimes. Although one witness, Hernandez, testified on direct that the robbery lasted "about ten minutes," on cross-examination Hernandez agreed that it really was less than five minutes. (II Trial Tr. at 161, 165–66.) Another witness also put the time frame as around 5–7 minutes. (I Trial Tr. at 105, 110.) Thus, even if the Tony's Deli robbery started at 7:05 P.M., it could have ended by 7:12 P.M. (or earlier), giving Nieves time to run the three blocks to Moran's by 7:15 P.M. Thus, the Tony's Deli robbery evidence did not foreclose Nieves' guilt of the Moran robbery.

Moreover, such a defense would have had to bring the Tony's Deli armed robbery to the jury's attention and implicitly concede that Nieves was guilty of that robbery. Such a defense would raise the risk that the jury would convict Nieves merely because they believed he was guilty of some armed robbery—which is why defense counsel usually work hard to prevent the jury from knowing about other crimes committed by their client. *See, e.g., United States v. Chambers,* 918

F.2d 1455, 1461 (9th Cir.1990) (counsel not ineffective for choosing to pursue defense that prevented government from introducing evidence of defendant's prior drug convictions); *see also, e.g., United States v. De-Vaughn,* 601 F.2d 42, 46 (2d Cir.1979) (other crime evidence usually is excluded because of the fear " 'that the accused might be convicted because of his participation in the other crime rather than because he is guilty beyond a reasonable doubt of the crime alleged.' ") (quoting *United States v. Manafzadeh,* 592 F.2d 81, 86 (2d Cir.1979)); *United States v. Orena,* 811 F.Supp. 819, 826 (E.D.N.Y.1992) (Weinstein, J.); Fed.R.Evid. 404(b).

Furthermore, Nieves had not been tried for the Tony's Deli robbery at the time of the Moran robbery trial. If Nieves testified and admitted to the Tony's Deli robbery at his Moran trial, he insured his conviction of the Tony's Deli robbery; even if he did not testify, his calling the Tony's Deli witnesses to "prove" his guilt of that crime at his Moran trial would have seriously weakened his defense of the Tony's Deli robbery charge. For example, to set up the time conflict, he would want the Tony's Deli witnesses to testify at his Moran trial that the Deli robbery took ten minutes and that he was one of the robbers; but his defense for the Tony's Deli robbery was mistaken identity because of the limited time the witnesses had to see the robbers. Reasonable counsel could well have concluded that two mistaken identity defenses (particularly since most of the Tony's Deli witnesses could not identify Nieves) were better than an alibi defense to the Moran robbery that significantly increased the likelihood of Nieves' conviction for the Tony's Deli robbery. This is especially so since the robbery alibi was thin—Nieves could have spent five or even seven minutes robbing Tony's Deli from 7:00 or even 7:05 P.M., and still have been able to run three blocks to Moran's (*see* Petition Ex. A: Map) by 7:15 P.M.[6]

---

**6.** Nieves' argument that counsel should have shown that Moran could not identify Nieves' Tony's Deli accomplices as the other two robbers suffers from a similar strategic defect—telling the jury Nieves was involved in another robbery.

Moreover, Moran testified that he did not see the faces of the other two robbers, who were behind him, but did see Nieves' face since Nieves was in front of him. (*See* 3/15/83 *Wade* Tr. at 21–22, 24–25; 3/17/83 Trial Tr. at 6–7, 24–25, 34, 36.)

Thus, it was reasonable for Nieves' attorney to not have pursued this other robbery alibi defense, since it would have presented witnesses identifying Nieves as an armed robber in a separate crime, but within a time frame and distance that the jury could have concluded that Nieves committed both robberies. Nieves has failed to overcome the strong presumption that counsel's strategy fell within the wide range of reasonable professional assistance.

## II. THE STATE DID NOT VIOLATE ITS BRADY OBLIGATIONS

Nieves' *Brady* claim that the state failed to provide exculpatory evidence is little more than a reiteration of his ineffective assistance claim in a different package. Nieves alleges that the state withheld the following evidence of his "innocence" of the Moran robbery: the photo array shown Moran that allegedly included a picture of Dodaj, who Moran did not identify as one of the robbers; Moran's failure to identify Dodaj and Aponte in lineups; and witness statements about the timing of the Tony's Deli robbery. (Petition at inserted p. (i).)

■ As to the photo array, Moran testified that he viewed a four photo array. (3/15/83 *Wade* Tr. at 11–15, 31–35, 40–42, 55–56; 3/17/83 Trial Tr. at 10, 33.) The Tony's Deli photo array that included Nieves and Dodaj's pictures, however, was a six picture array. (5/16–19/83 *Wade* Tr. at 110–11, 116.) Nieves presents no evidence that the Tony's Deli array was the same array as Moran viewed.

■ More importantly, this information was at least implicitly known to Nieves and his counsel. Whether or not they knew that Moran saw photo arrays or lineups including Dodaj and Aponte, Nieves and counsel knew that only Nieves was charged with Moran's robbery (*see* Nieves 11/7/96 Reply Br. at 6–7), because Moran could not identify the other robbers. "'Evidence is not "suppressed" if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.'" *United States v. Zackson,* 6 F.3d 911, 918 (2d Cir.1993) (quoting *United States v. LeRoy,* 687 F.2d 610,

618 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983)). Here, Nieves and counsel knew that Moran had not identified the other two robbers. *See, e.g., People v. Ramirez,* 224 A.D.2d 455, 456, 638 N.Y.S.2d 126, 128 (2d Dep't 1996) (no Brady violation for failure to turn over photo array where the "exculpatory value that would have been derived from the photo array would be no more than the complainant's failure to identify the defendant, an issue that was fully explored by the defense counsel in his cross-examination"); *see also, e.g., People v. Quinones,* 228 A.D.2d 796, 798, 644 N.Y.S.2d 365, 368 (3d Dep't 1996) (same) Moreover, Moran also testified both at the *Wade* hearing and at trial that he did not see the faces of the two robbers who were behind him. (3/15/83 *Wade* Tr. at 22; 3/17/83 Trial Tr. at 6–7, 24, 34.) Thus, Moran's failure to identify the other two robbers (whether Dodaj and Aponte or anyone else) in no way casts doubt on his identification of Nieves—the robber who stood in front of Moran during the robbery.

■ Finally, as to the timing of the Tony's Deli robbery, Nieves' claim is premised on that robbery lasting ten minutes. In fact, the only witness who said that quickly changed his testimony and agreed that the robbery lasted less than five minutes, which is consistent with the other witness's estimate of five to seven minutes. (I Trial Tr. at 105, 110; II Trial Tr. at 161, 165–66.) The timing of the Tony's Deli robbery from 7:00 or 7:05 P.M. to 7:12 P.M. does not alibi Nieves for the 7:15 P.M. robbery of Moran, just three blocks away. Moreover, as discussed in Point I.B above, defense counsel was aware that Nieves was charged with two robberies within a short time frame and decided not to claim that Nieves did not rob Moran because he was busy with another robbery, but instead to pursue mistaken identification defenses in both cases. As noted above, that strategy was reasonable, and nothing in the allegedly withheld material in any way changes that determination. And as noted above, evidence is not suppressed if the defendant should have known the essential facts permitting him to take advantage of the exculpatory evidence. *United States v.*

*Zackson,* 6 F.3d at 918. Here, Nieves (and his counsel) knew of the two robberies and could have pursued evidence of the exact timing if that really would have shown Nieves' innocence of the Moran robbery and if counsel decided to pursue such a risky strategy. In other words, "favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995) (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)). Here, had the allegedly non-disclosed evidence been provided to Nieves' counsel, there is no reasonable probability that the Moran trial result would have been different, because counsel reasonably was not pursuing a Tony's Deli-robbery-alibi defense. *See, e.g., Wright v. United States,* 559 F.Supp. 1139, 1146 (E.D.N.Y. 1983) ("*Brady,* however, does not require the government to anticipate all possible defenses and provide the defendant with otherwise irrelevant information to bolster one possible factual theory, particularly where, as here, the theory itself ... is demonstrably implausible."), *aff'd,* 732 F.2d 1048 (2d Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985). Nieves should not be able to convert that strategic decision into a *Brady* claim.

### CONCLUSION

For the reasons set forth above, I recommend that the Court deny Nieves' habeas petition.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Denise L. Cote, 500 Pearl Street, Room 1040, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Cote. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Nov. 13, 1997.